## Barnes et al. v. Tipton et al.

May 9, 1941

Shumate & Shumate for appellants.

John W. Walker for appellee Tipton.

Clarence Miller for appellees Russell Barnes and wife.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Wallace Barnes died testate in 1929 while a citizen and resident of Estill County, Kentucky. He left surviving him his widow and some adult children, three of whom were Charles, Russell and Hood Barnes. Another was Carrie Estes, a married daughter with some living children. Testator owned quite a sizeable farm bounded by the Kentucky River and running back into its bordering hills or bluffs, and a considerable portion of it was bottom land lying next to the river. Prior to his death, and on March 30, 1929, he executed his will, in which he gave all of his land to his widow for and during her natural life, with directions that the remainder be divided among his surviving adult children (all of whom had arrived at that age), and designated in his will the general location of the portions of his farm each of his children should receive in both hill land and bottom land, but he gave no description as to such portions. However, he wrote in his will that "I request that James Winn and William Broaddus shall make the division of lands herein provided for," and then appointed his two sons, Charles and Hood Barnes as executors of his will, in which he further said that the portion of his farm to be allotted to his daughter, Carrie Estes, be given to her for her life and then to her children. He then directed that his executors hold her portion in trust until that provision of his will was executed, which provision, however, is not material here, since this litigation does not involve it.

Shortly before September 18, 1929, and by consent of all parties, including the widow as life tenant, the two commissioners designated by testator's will, with a surveyor, went upon the devised farm and divided it into parcels in accordance with the directions of testator's will as best they could, and laid off each portion on the ground, one of which was allotted to Charles Barnes and another adjoining it was allotted to Russell Barnes. The line between those two portions—according to the undisputed evidence—was staked off and a tree or trees along the line plainly marked. Either Winn, who was surveyor, or Tuttle, the commissioners' surveyor, made a written report of the division of testator's farm as laid out on the ground, which was filed and recorded in the county court clerk's office, and on the last indicated date above (September 18, 1929) a partition deed was exe-

cuted by all of the heirs individually—and in addition thereto Charles Barnes and Hood Barnes executed it as executors of their father's will, and also as trustees for the share of their sister Mrs. Estes and her children; but the widow did not sign or execute that deed. She, however, so far as this record shows, agreed for the division to be made at the time it was done.

The partition deed so executed was acknowledged, filed and recorded in the county court clerk's office and each heir took possession and charge of his or her respective allotted portions of their father's landed estate in accordance with the divisions made on the ground by the commissioners and their surveyor, Tuttle. For some reason (which the testimony shows beyond dispute was by an oversight or mistake) the report of the division— as well as the partition deed—did not describe the division line between the shares allotted to Charles and Russell Barnes at the place where the commissioners located it; but on the contrary, in both the report and partition deed, that line was moved over on to the portion allotted to Charles Barnes far enough to take in and embrace six acres of land which the commissioners had actually apportioned on the ground to him, and, correspondingly, there was conveyed to Russell Barnes that six acres and which was that much more than the commissioners intended to or actually did allot to him. Nevertheless, and without discovering that mistake, Charles Barnes took possession of his allotted portion up to the line marked and staked by the commissioners on the ground and Russell Barnes took possession of his portion up to the same line.

At that time, or shortly thereafter, a fence was built a part of the way on the line designated by the commissioners and the two brothers, Charles and Russell Barnes, thereafter cultivated the respective portions of which they had taken possession up to that fence, and by mutual consent they threw up a ridge along the remaining portion of the line not occupied by the fence, and each of them thereafter regarded it as the line between them which was not marked by the fence. Neither of them claimed any land beyond that line so taken possession of by each of them up to the time of the death of Charles Barnes in 1933, after which his heirs, who are made defendants in this case, continued the possession up to that line and have held it up to this time.

On the 14th of March, 1938, Russell Barnes and wife sold and conveyed to the appellee F. P. Tipton all the land which Russell Barnes received under his father's will, describing it in his deed as was done in the report of the commissioners, and in the partition deed—the mistake referred to not having then been discovered. But before that deed was executed to Tipton—and while the negotiations for the purchase were being conducted —Russell Barnes pointed out to his vendee (appellant) the line between him and the heirs of his brother Charles Barnes which was the one that the commissioner had designated on the ground and which was then marked by the fence and the ridge referred to, as well as by the marked trees made by the commissioners and their surveyor. After procuring that deed Tipton asserted claim to the six acres, so mistakenly embraced by his deed, and later filed this action against all of the heirs and devisees of Wallace Barnes, except his widow, in which he sought to recover the six acres from the heirs of Charles Barnes, who were then and had been since their father's death in the possession of it and claiming to own it. Recovery was sought upon the ground that the deed from Russell Barnes to plaintiff embraced the land plaintiff sought to recover and the title to which he prayed might be quieted in him. He also alternatively prayed in his petition that if he should be unsuccessful in recovering the land sought by his petition that he then recover judgment against Russell Barnes for damages because of breach of warranty.

Defensive pleadings relied on champerty, since the contested six acres of land was at the time plaintiff received his deed in the adverse possession of the heirs of Charles Barnes, of which plaintiff had actual knowledge. Another defense was estoppel, since plaintiff was shown by his vendor, Russell Barnes, the exact location of the disputed line; and lastly, it was alleged that if neither of the defenses mentioned was available, then defendants prayed for a reformation of the partition deed so as to conform to the actual division made on the ground by the commissioners under the will of the testator, Wallace Barnes. Those defenses were attempted to be avoided by plaintiff upon the alleged ground that the partition was made through some sort of court proceedings and under a judgment of the court and which it is contended, had the effect of converting the partition deed from an inter partes transaction, or conveyance,

into an enforced judicial partition through and by decretal deeds and conveyances; in which latter case it was also contended that possession contrary to such an alleged judicial conveyance is not embraced by the champerty statute, which is Section 210 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes. Nor, as argued by plaintiffs' counsel, could such a deed (decretal one) be reformed for oversight, mistake or other ground by an independent action as may be done with reference to an inter partes written contract. Various motions, amendments and other pleadings finally formed the issues to which we have referred, and testimony was taken by the respective litigants, followed by a submission of the cause to the court. It sustained plaintiffs' prayer for a recovery of the land against the heirs of Charles Barnes, but dismissed "without prejudice" the action for damages against Russell Barnes, and from that judgment the heirs of Charles Barnes prosecute this appeal, making Tipton, Russell Barnes and his wife appellees.

From the foregoing it will be seen that the only question presented by the appeal is whether or not the court correctly adjudged the contested six acres of land to belong to the plaintiff and appellee Tipton? The effort of plaintiff to avoid the plea of champerty, for the reason we have stated, and his effort to defeat reformation of the partition deed as based upon the same reason, need not and will not be determined by us, since we are clearly convinced that the premise upon which those contentions are rested does not appear in this case, there being no proof or pleading anywhere in the record that either the partition deed, or the actual partition made by the commissioners, was made and executed through any judicial proceeding. However, it is so argued by counsel for plaintiff because of the fact that the partition deed, immediately following the notary's certificate of acknowldegment, contained this endorsement: "Examined and approved in open court this 26th day of October, 1929. Sam Hurst, Judge, Estill Circuit Court." Whether or not the report of the Commissioners who divided the land contains a similar endorsement we do not know, since the report is not made a part of the record; but, however that may be, it is perfectly clear that such endorsements were entirely unnecessary to carry out the provisions of the will of Wallace Barnes, and either or both of them were entirely useless

and purposeless, being nothing more than mere surplusage without any legal effect.

Nevertheless, it is argued that because of such alleged judicial endorsement we should indulge the presumption that the partition was made in some sort of judicial procedure, and that contention is made, notwithstanding the fact that every allegation, and all of the thestimony in the case clearly indicates that the partition was made as directed by the will of Wallace Barnes and solely by an inter partes transaction. That being so no reason could exist why all of the writings evidencing the division of the land, being inter partes transactions, may not be reformed for the same reason and under like procedure that any other inter partes writing may be reformed. As we have intimated, the testimony in the case—as given by all of the defendants who testified, by Russell Barnes, plaintiffs' vendor, by the two commissioners and their surveyor Tuttle, and every other witness testifying upon the subject—the division line as laid off by the commissioners on the ground was and is the one now contended for by defendants and to which the parties owning the land on either side thereof took possession at the time and which they have continuously held and asserted since then. Moreover, the possession so taken was known by plaintiff before he obtained his conveyance, and we think there is no doubt but that he was then aware of the existence of the mistake referred to, and for which reason he is in no attitude to resist reformation on the ground of being an innocent purchaser. In other words he is not a bona fide and innocent purchaser of the six acres of land in contest when he knew that his vendor was only purporting to convey to him the land extending up to the line which the contiguous owners had agreed was the actual one separating their possessions.

Many cases from this court, and some texts and cases from other courts are cited on the legal points to which we have referred; but because of the false premise assumed supra they are not applicable to the facts of this case, and for which reason it will be unnecessary to refer to or discuss any of them. We, therefore, conclude that the court erred in dismissing defendants' counter-relief for a reformation of the partition deed in so far as it relates to the description of the respective tracts of land conveyed to Charles and Russell Barnes so as to conform to the actual division made by the com-

missioners on the ground, and which they intended to be carried out by the execution of a properly executed deed. The report which they made and filed with the county court clerk was and is a totally irrelevant action on their part, and for which reason it is unnecessary that it also should be reformed, although its reformation might serve to clear up the title of future owners, and especially so since it has been unnecessarily filed and recorded.

Wherefore, the judgment is reversed, with directions to set it aside, and to render one directing the reformation of the partition deed with reference to the dividing line between the lands allotted to Charles and Russell Barnes, so as to locate it where the commissioners and the parties fixed and located it, and to which they each took possession, and to then dismiss plaintiffs' petition, and for other proceedings not inconsistent with this opinion.